Selden, J.
 

 This is a suit in equity, the object of which is to obtain a perpetual injunction, restraining the defendants from continuing to use and occupy with their railway a portion of a certain highway or street, in the village of Syracuse, known as Washington-street, and to recover damages for its past occupation. Washington-street was gratuitously dedicated to the use of the public by the plaintiff and others through whose land it was laid; and the Utica and Syracuse Bailroad Company, to the rights iind liabilities of which the defendants have succeeded, constructed their railway upon it without making any compensation to the plaintiff, and without his consent. At the time the track was laid the plaintiff was the owner of a large number of lots fronting upon the street, a portion of which he has since sold, with a reservation of his claim against the railroad company for damages, and a portion of which he still owns. The damages which have accrued, both upon the sold and unsold portions of the premises, are claimed in this suit.
 

 The defendants, in justification of their occupation of the street, show that the charter of the Utica and Syracuse Bail-road Company
 
 (Laws of
 
 1836, 319, § 11) declares that their road might “ intersect” and be built upon any highway, and that this right is confirmed by the general railroad act of 1850.
 

 They also show the express consent of the municipal authorities of the village, as well as of the city of Syracuse,
 
 *92
 
 to such occupation. The principal question, therefore, and the only one which I deem it necessary to consider is, whether the state and municipal authorities combined could confer upon the railroad company the right to construct their road upon this street, without obtaining the consent of the plaintiff or making him compensation.
 

 If the railway encroaches in any degree upon the plaintiff’s proprietary rights, then it is clear that the constitutional inhibition, which forbids the taking of private property for public use “ without just compensation,” applies to the cases.
 

 It is conceded that, by the dedication, the public acquired no more than the ordinary easement or right to use the premises as a highway; and that the plaintiff continues the owner in fee, in respect to the unsold lots, to the centre of the street, subject only to this easement; but it is contended that the taking and use of the street by the railroad company does not encroach upon the reserved rights of the plaintiff, because the use of a street for the purposes of a railroad is only “one of the modes of enjoying the public easement.”
 

 Before examining this position in the light of principle, it will be well, as the question is one of great importance, to ascertain how far it may be regarded as settled by authority. In doing this it is indispensable, to avoid confusion, to separate those cases which bear directly upon the question, from numerous cases, which, although they may appear upon a cursory reading to have some bearing upon the subject, will be found upon closer examination to throw no light upon it.
 

 In the first place, then, it should be observed that this case bears no analogy to that class of cases in which the main inquiry is, not as to any violation, either direct or consequential, of the corporeal rights of property of the plaintiff, but rather to those incidental injuries which unavoidably result from the construction of railways through the streets of populous towns and villages, such as noise, smoke, fright
 
 *93
 
 ening of horses, obstruction to the free and convenient use of the street, &c. I will refer to two or three of the cases belonging to this class, which might be supposed, unless closely examined, to have something to do with the question.
 

 The case of
 
 Drake
 
 v.
 
 The Hudson River Railroad Company
 
 (7
 
 Barb.,
 
 508) was a suit brought by a number of persons claiming to be owners of lots fronting on Hudson-street, in the city of New-York, to restrain the defendants from laying down their rails in that street. Although it was alleged in the complaint that the plaintiffs were owners in fee of the soil to the centre of the street, and the point was made that the conversion of the street into a railroad track was a violation of their rights of property, yet, as the plaintiffs entirely failed to establish any title in themselves to the soil of the street, the question presented here did not and could not arise. Justice Jones, who delivered the leading opinion, says: “The plaintiff can, consequently, have or claim no
 
 right or title
 
 to the legal estate of the portions of Hudson and Canal streets taken by the corporation of the city, by authority of law, for the purpose of laying out and forming or opening the same.”
 

 Justice Edwards also denied that the plaintiff had any title to the soil of the street. Indeed, no case is likely to arise in the city of New-York which would be entitled to any weight in the decision of this question, for the reason that it is claimed, and apparently with much justice, that, as to a large portion of the streets in that city, the fee of the land, and not a mere easement, is vested in the corporation. Judge Hoffman, in his recent work on the corporate powers of the city, after arguing with much clearness and force in favor of the position, says : “ In every street, then, opened under the provision of the acts of 1807 and 1813, the
 
 fee in the soil
 
 is vested in the corporation. It is divested from the Original owners.”
 
 (Hoffman’s Treatise,
 
 289.)
 

 There are also two cases which have arisen in the city of Brooklyn, which it may be well briefly to notice, viz..
 
 Plant
 
 
 *94
 
 v.
 
 Long Island Railroad Company
 
 (10
 
 Barb.,
 
 26) and
 
 Hentz
 
 v.
 
 The Same
 
 (13
 
 Barb.,
 
 646). In neither of these eases did the question here presented arise. In the first, the defendants, under an authority from the common council of the city of Brooklyn, had constructed a tunnel under the street upon which the plaintiff’s premises were situated. The opinion of the court was delivered by Justice Edwards, who, while he argued at some length in favor of the power of city corporations to deal with streets in a way not authorized in respect to highways in the country, nevertheless held that the question now under consideration did not arise. After insisting that it did not appear in the case but that the plaintiff might have received compensation, he says : “ But again, suppose that no compensation has been made to the owners of the adjoining lands, and no consent has been obtained from them, how can the plaintiff take advantage of it in this suit ? He does not claim damages for trespass upon land owned or possessed by him, nor for an inj ary done to the soil in front of his lot.
 
 He claims consequential damages for injury alleged to have ieen done to his business.”
 

 In the second, which was a special term case, Judge Strong, before whom it was heard, cautiously reserves his opinion upon the point before us. After showing that the plaintiff had established no title to the soil of the street, he says: “ But if the plaintiff had a full title to the land in question when it was first taken, and if he would
 
 then
 
 have been entitled to any compensation from the defendants for appropriating it to a species of locomotion different from that for which it had been dedicated or acquired (concerning which it is not necessary that I should give an opinion, nor do I), there is still a serious obstacle in the way of obtaining an injunction.”
 

 The case of
 
 The Ohio and Lexington Railroad Company
 
 v.
 
 Applegate
 
 (8
 
 Dana,
 
 289), having been decided by the highest court in Kentucky, is apparently relied upon; but it clearly belongs to the same class with those already con
 
 *95
 
 sidered. Chief Justice Robertson there discusses the general subject very elaborately and in a variety of aspects; but, upon careful analysis, it will be found that the only points involved in the case were, whether the railroad was a purpresture, or such an interference with the incorporeal rights or easements appurtenant to the plaintiff’s lots, situated upon the street, as constituted it a private nuisance. Indeed, the latter may be considered the only point, as there clearly could be no purpresture when the road was constructed by the express authority of both the municipal and state governments. No such question as that presented in this case could have arisen, because the fee of the land over which the street was laid was regarded as being, not in the plaintiffs, but in the corporation of Louisville. This clearly appears from the language of the chief justice. In one portion of his opinion he says: “Although, therefore, an ordinary public way may be discontinued, or applied to some other public purpose than that for which, it was first established, without any legal liability for pecuniary compensation to the local public, or to any owner of adjoining lands, because neither such public nor proprietor had any right of property in the way, or any other legal interest in it than that which was common to all the people;
 
 and though also the maijor and council, holding the legal title to the streets of Louisville in trust, chiefly for public purposes,
 
 might regrade and improve those streets,” &c.
 

 This extract shows, not only that the plaintiffs had no title io the soil, but that they were seeking redress for being deprived of their easement in the street, and that this was the point under consideration by the court.
 

 These cases and others of the same class maybe considered as settling the question that a railroad in a populous town is not a nuisance
 
 per se,
 
 and that, when the railroad com pany has acquired the title to the land upon which its road is located, such company, being in the exercise of a lawful right, is not liable, unless guilty of some misconduct or
 
 *96
 
 negligence, for any consequential injuries which may result to others from the operation and use of its road; but they decide nothing whatever in regard to the question to be considered in this case; and it would not have been necessary to notice them at all, were it not that in some of them so many points are discussed, which were not before the court, that, without a close examination, what is really decided would not readily be seen.
 

 There is also another class of cases in which, although the injury complained of is to the corporeal rights of the plaintiff, yet, being merely consequential, and no direct trespass or unauthorized intrusion upon the plaintiff’s property being alleged, the question under consideration here could not arise. Such are cases of
 
 Fletcher
 
 v.
 
 The Auburn and Syracuse Railroad Company
 
 (25
 
 Wend.,
 
 464);
 
 Chapman
 
 v.
 
 The Albany and Schenectady Railroad Company
 
 (10
 
 Barb.,
 
 360 ). In these and the like cases, the title of the company to the ground on which its road is built is not disputed; it is unnecessary, therefore, to notice them further here.
 

 We come, then, to the consideration of the cases which do bear, with more or less weight, upon the question to be decided, and upon which, so far as authority is concerned, its decision must mainly depend. The first among these cases, in the order of time as well as of importance, is that of
 
 The Presbyterian Society of Waterloo
 
 v.
 
 The Auburn and Rochester Railroad Company
 
 (3
 
 Hill,
 
 567). The declaration was in trespass for entering upon the plaintiffs’ premises, digging up the soil, and constructing their railroad track upon it. The defence was, that the
 
 locus in quo
 
 was a public highway, and that the charter of the company expressly authorized it to construct its road upon and across any highway. The point, therefore, was presented in the most direct manner possible, and the defence was most emphatically overruled. The language of Chief Justice Nelson is most pertinent and forcible. He says: “ But the plaintiffs were not divested of the fee of the land by the laying out of a
 
 highway;
 
 nor did
 
 *97
 
 the public thus acquire any greater interest therein than a right of way, with the powers and privileges incident to that right; such as digging the soil, and using the timber and other materials found within the limits of the road, in a reasonable manner, for the purpose of making and repairing the same. Subject to this easement, and this only, thfe rights and interests of the owner of the fee remained unimpaired. It is quite clear, therefore, even if the true construction of the eleventh section accords with the view taken by the counsel for the defendants, that the legislature
 
 had no power
 
 to authorize the company to enter upon and appropriate the land in question, for purposes other than those to which it had been originally dedicated, in pursuance of the highway act, without first providing a just compensation therefor.”
 

 It was urged in that case, as in this, that using the road for a railway was only a different mode of exercising the right which had been acquired by the people; that the use was virtually the same, viz., that of accommodating the traveling public. But the argument met with no favor from the court. Judge Nelson says: “ It was said on the argument that the highway is only used by the defendants for the purposes originally designed, the accommodation of the public, and for this compensation has already been made. This argument might have been used with about the same force in the case of
 
 Sir John Lade
 
 v.
 
 Shephard (2 Strange,
 
 1004).”
 

 He adds, on this subject: “The claim set up (by the defendants) is an
 
 easement;
 
 not a right of passage to the
 
 puhlu
 
 but to the
 
 company,
 
 who have the exclusive privilege of using the track of the road in their own peculiar manner. The public may travel with them over the track,
 
 if they choose to ride in their cars”
 

 This case, decided by our late Supreme Court upon full consideration and in so emphatic a manner, ought to be conclusive, unless it appears upon principle to be clearly erroneous. It has never been overruled, nor has its force been materially impaired by any decision in this state. The case
 
 *98
 
 of
 
 Adams
 
 v.
 
 The Saratoga and Washington Railroad Company
 
 ( 11
 
 Barb. S. ,C. R.,
 
 414) might seem, both from the note of the reporter and from some of the remarks of the learned judge who delivered the opinion, to be inconsistent with the case just reviewed; but upon careful examination it will be found that nothing which was necessarily decided in it conflicts in the slightest degree with that case.
 

 The action was ejectment, to recover portions of a street in the village of Whitehall called Church-street, upon and along which the defendants had constructed their railroad track. Jeremiah Adams, under whom the plaintiff claimed, had originally dedicated the street to the use of the public, laying out lots on each side, all of which he had sold and conveyed to different individuals. The plaintiff’s claim rested upon the ground that the title of the purchasers of these lots did not extend to the centre of the street. The court, however, rejected this claim, and held that the plaintiff had no title whatever to the land occupied by the defendants’ road. This certainly was sufficient to dispose of the case, and all that was said, therefore, upon the question depending here, was strictly
 
 obiter.
 
 The same may be said in regard to the case of
 
 Milhau
 
 v.
 
 Sharp
 
 (15
 
 Barb. S. C. R„
 
 193). The question did not arise in that case.
 

 We might, therefore, with propriety, perhaps, consider the case of
 
 The Presbyterian Society in Waterloo
 
 v.
 
 The Auburn and Rochester Railroad Company (supra)
 
 as definitively settling the point in this state.
 

 I will, however, refer to the case of
 
 The Philadelphia md Trenton Railroad Company
 
 (6
 
 Whart.,
 
 25), by way of illustrating the reasoning that must be resorted to in order to sustain the right of a railroad company to occupy a highway, without making any compensation to the individual owners of the fee. The case came before the Supreme Court of Pennsylvania, upon exceptions to the report of the jurors or commissioners appointed by the Court of Quarter Session? of Philadelphia county to designate the route of the road
 
 *99
 
 they having located a part of the road upon and along Front street, in the district of Kensington, a part of the city oí Philadelphia.
 

 Exceptions were taken by the commissioners having charge of the streets in Kensington, and also by the individual pro prietors of lots on Front-street; by the former, on the ground that the location of the road upon the street interfered with the public easement vested in the corporation of the city, and by the individual citizens on the ground that private property was taken for public use without compensation, contrary to the provision of the state constitution.
 

 The exception of the commissioners is answered by Chief Justice GtIbson in this wise. He says: “ The legal title to the ground, therefore, remains in him who owned it before the street was laid out; but even that is an immaterial consideration, for an adverse right of soil could not impair the public right of way over it, or prevent the legislature from
 
 modifying, abridging or enlarging its use,
 
 whether the title was in a corporation or
 
 a
 
 stranger.” It is unnecessary here to question the soundness of this position, although & doubt might arise whether an easement which is
 
 quasi
 
 at least a matter of contract can properly be abridged or enlarged by the legislature. The doctrine may perhaps be true in respect to the streets of a city, so far as the corporation alone is concerned, on the ground that the easement is not for the exclusive benefit of the corporators but of the whole people, and, therefore, that the ultimate trust is in the state government; but that the legislature have the power to enlarge a use, as against the donor or vendor of such use, is a doctrine to which I cannot give my assent.
 

 But the chief justice gives a different answer to the exception by the individual proprietors. He says: “What, then, is the interest of an individual inhabitant, as a subject of compensation, under the constitutional injunction that private property be not taken by a corporation for public use without it ? Even agreeing that his ground extends to the middle
 
 *100
 
 of the street, the public have a right of way over it. Neither the part used for the street nor the part occupied by himself is taken away from him; and as it was dedicated
 
 to public use, without restriction,
 
 he is not within the benefit of the constitutional proliibitionl' which extends not to matters of annoyance.”
 

 Is this sound doctrine? Is it true that one who dedicates land, for a highway or street, dedicates it to the public use without restriction? I apprehend it is an assumption wholly unfounded, and contrary to a multitude of cases in which it has been held that the public acquire nothing beyond the mere right of passing and repassing upon the highway, and that in all other respects the rights of ¡the original owner remain unimpaired.
 

 I will not dwell longer upon this case, as it will not be seriously, and cannot be successfully, contended either that the dedication of land for a highway gives to the public an unlimited use, or that the legislature have the power to encroach upon the reserved rights of the owner by materially enlarging or changing the nature of the public easement.
 

 The only plausible ground which can be taken is that which was assumed in the case of
 
 The Presbyterian Society of Waterloo
 
 v.
 
 The Auburn and Rochester Railroad Company (
 
 supra)', and which has also been assumed here, viz.: That to convert a highway into a railroad track is no material change in, or enlargement of, the uses to which it was originally dedicated ; that the construction of a railroad along a highway is simply one of the modes of accomplishing the object of the original dedication, viz., that of creating a thoroughfare and passage-way for the public; in short, that the railroad is a species of highway, and that the two uses are substantially identical.
 

 But is this assumption just? Are the two uses the same? If the only difference consisted in the introduction of a new motive power, it would not be material. But is there no distinction between the common right of every man to use
 
 *101
 
 apon the road a conveyance of his own at will, and the right of a corporation to use its conveyances to the exclusion oí | all others; between the right of a man to travel in his own | carriage without pay, and the right to travel in the car of a railroad company on paying their price ?
 

 It may be said that the use of the road as a common highway is not subverted; that a man may still drive his own carriage upon it. Without pausing to notice the fallacy of this argument, and the impracticability of the enjoyment of such a right where railroad trains are passing and repassing every half hour, let us look at the subject in another point of view. The right of the public in a highway is an easement, and one that is vested in the whole public. Is not the right of a railroad company, if it has a right to construct its track upon the road, also an easement? This cannot be denied, nor that the latter easement is enjoyed, not by the public at large, but by a corporation; because it will not , be pretended that every man would have a right to go and : lay down his timbers, and his iron rails, and make a railroad I upon a highway. Here^then, are two easements; one vested in the public, the other in the railroad company. These easements are property, and that of the railroad company is valuable. How was it acquired? It has cost the company nothing. The theory must be that it is carved out and is a part of the public easement, and is therefore the gift of the public. This would do, if it was given solely at the expense of the public. But it is manifest that it is at the joint expense of the public and the owner of the fee. Ought not the latter, then,rio have been consulted?
 

 But it is unnecessary to refine upon this case. Any one can see that, to convert a common highway, running over a man’s land, into a railroad, is to impose an additional burden upon the land, and greatly to impair its value. As no compensation has, in this case, been made to the owner, his consent must in some way be shown. The argument is, that as he has consented to the laying out of a highway upon hia
 
 *102
 
 land,
 
 ergo,
 
 he has consented to the building of a railroad upon it; although one of these benefits his land, renders access to it easy, and enhances its price, while the other makes access to it both difficult and dangerous, and renders it comparatively valueless. Were the transaction.between two individuals, every one would see at once the injustice of the conclusion attempted to be drawn. It is the public interest supposed to be involved which begets the difficulty, and it is just for this reason that the constitution interferes for the protection of individual rights, and provides that private property shall not be taken for public use without compensation ; a provision no less necessary than just, and one which it is the duty of the courts to see honestly and fairly enforced.
 

 The case stated by the learned justice who delivered a dissenting opinion in the Supreme Court is a striking illustration of the injustice that would frequently be done under-the rule contended for by the defendants. A street was laid out through a man’s land, and he was assessed several hundred dollars for benefits, in addition to the land taken; and before the street was opened it was taken by a railroad company and converted into the track of their road. The owner lost his land, had to pay several hundred dollars, and had the annoyance of the railroad besides; while the railroad company got the road for nothing.
 

 The case of
 
 Inhabitants of Springfield
 
 v.
 
 Connecticut River Railroad Company
 
 (4
 
 Cush.,
 
 63) shows what the Supreme Court of Massachusetts thought of the argument that the uses are the same. It was insisted there, on the part of the defendants, that the power conferred upon them by the legislature, to build their road between certain termini, gave them by necessary implication the right to build their track upon any intervening highway. But Chief Justice Shaw, in reply to this argument, says: “ The two uses are almost, if not wholly, inconsistent with each other, so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated. The whole course
 
 *103
 
 of legislation on the subject of railroads is opposed to such a construction.”
 

 I concur with the learned chief justice, and have no hesitation in coming to the conclusion that the dedication of land to the use of the public as a highway is not a dedication of it to the use of a railroad company; that the two uses are essentially different; and that, consequently, a railway cannot be built upon a highway without compensation to the owners of the fee. The legislative provisions on the subject were probably intended, as was intimated in
 
 The Presbyterian Society of Waterloo
 
 v.
 
 Auburn and Rochester Railroad Company (supra),
 
 to confer the right so far only as the public easement is concerned, leaving the companies to deal with the private rights of individuals in the ordinary mode. If, however, more was intended, the provisions are clearly in conflict with the constitution, and cannot be sustained.
 

 It follows that the defendants, in constructing their road upon Washington-street without the consent of the plaintiff, and without any appraisal of his damages or compensation to him in any form, were guilty of an unwarrantable intrusion and trespass upon his property, and that he is entitled to relief. Although he had a remedy at law for the trespass, yet, as the trespass was of a continuous nature, he had a right to come into a court of equity, and to invoke its restraining power to prevent a multiplicity of suits, and can of course recover his damages as incidental to this equitable relief. There may be doubt as to his right to recover in this suit the damages upon the lots which have been sold; because, as to those lots, there was no occasion to ask any equitable relief, and to permit the damages to be assessed in this suit, in effect deprives the defendants of the right to have them assessed by a jury. But as this question has not been raised, it is unnecessary to consider it.
 

 The judgment must be reversed, and there must be a new trial, with costs to abide the event.
 

 
 *104
 
 Shankland, J., read an opinion concurring in the result »f the foregoing, and discussing certain questions of evidence which the disposition of the main point, in accordance with his opinion and that of Selden, J., rendered it immaterial to decide, and which were therefore not passed upon by the court. Comstock and Paige, Js., took no part in the decision. All the other judges concurring,
 

 Judgment reversed and new trial ordered