## HEATH *vs.* BARMAN.

Where land which had never been a highway was taken by a plank road company for the purposes of its road, the same being either donated to the company, or purchased and paid for by it, and the plank road company was subsequently dissolved, and its road abandoned, whereupon the commissioners of highways of the town claimed the land for a highway, and continued to use it as such; *Held,* that although the plank road company was a private corporation, all lands taken by it were for *public use;* and that the use to which the land in question was now devoted, to wit, a highway, being also a *public use,* was not such a *change* of the use as to justify the original owner of the fee in taking possession of such land in default of a new compensation to him.

The statute of 1854, authorizing a plank road company to abandon its road, or portions of it, and providing that, thereupon, the road shall cease to be the road or property of the company, and revert and belong to the several towns through which it was constructed, should be construed as meaning plank roads constructed upon lands, though they had not previously belonged to the town, or been used for highways. Such lands are to pass to the towns as highways.

Though the *reversion* in the lands taken for a plank road was and still continues in the original owner of the fee, yet the land having been lawfully taken for public use, the *title*, by the act of the original taker, and by force of the statute, passed to the town, upon the abandonment of the road, the same public use, in substance, being preserved.

THIS was an action for trespass on land, and was tried by the court, at the Chautauqua circuit, in January, 1867.

*A. Hazeltine,* for the plaintiff.

*C. R. Lockwood,* for the defendant.

MARVIN, J. I have examined the evidence, and the briefs and arguments of counsel, and without here stating the history or the facts relating to the title of the *locus in quo,* I will simply say that I think the title of the plank road company, as against the plaintiff, was sufficient to defeat his action.

Under the Code, the equitable rights of the parties, as well as legal, are to be considered. This will bring us to the more difficult and important question in the case. The plank road company was dissolved seven years ago. It ceased to maintain the plank road, and the town of Gerry, or the commissioners of highways of that town, thereupon claimed the *locus in quo* for a highway, and have used it as such. Is this claim valid, or has the land reverted to the plaintiff, the fee owner, discharged of any burden in behalf of the public? It was taken by the plank road corporation for the purposes of its road, and for no other purpose. It had never been a highway. It was either donated to the corporation, or purchased and paid for by it. In short, as to the corporation, the provision of the constitution inhibiting the taking of private property for public use, without just compensation, was satisfied.

But it is argued, that it was taken for a certain defined purpose, and by a certain corporation, and that the purpose

cannot be changed ; and that the town of Gerry, or the public, cannot succeed to the rights of the corporation ; and cannot, in short, enjoy the land for a highway without acquiring this right from the plaintiff by making just compensation. There is no difficulty upon the question of compensation. That has been made. The difficulty, if any exists, has reference to the *use* to which the road, when taken by the corporation, was to be devoted — the burden or servitude imposed upon it.

The land was taken for a public use, though the plank road company was a private corporation. All lands taken by it were for *public use.* This has often been so decided, in reference to railroads and plank roads, &c. The use to which the land is *now* devoted is a *public use.* It is now claimed and used as a highway. The question is to turn, I think, upon the *character* of the *use.* In *Williams* v. *The New York, &c. Railroad Co.*, (16 *N. Y. Rep.* 97,) it was held that a railroad could not be constructed and used upon a highway without the consent of the fee owner, or making compensation to him. That the construction of the railway upon the highway was the imposition of a new, different and additional servitude ; and the question was made to turn upon the character of the public servitude or easement. Judge SELDEN (page 111) says : " The dedication of land to the use of the public, as a highway, is not a dedication of it to the use of a railroad company ; that the two uses are essentially different ; and that, consequently, a railway cannot be built upon a highway without compensation to the owner of the fee." Ch. J. Shaw, in 4 *Cush.* 63, speaking of railroads and highways, says : " The two uses are almost, if not wholly, inconsistent with each other, so that taking a highway for a railroad will nearly supersede the former use to which it had been legally appropriated. The whole course of legislation, on the subject of railroads, is opposed to such a construction." It was upon these grounds that these cases were decided. (*And see the Presb. Society of Waterloo* v. *The Auburn and Rochester Railroad Co.*, 3 *Hill*, 567.)

Heath *v.* Barman.

It is not denied that the *public use* may be somewhat modified. I have never heard it suggested that the legislature transcended its powers when it authorized plank road companies to substitute *gravel* for *plank*.

After reading the above, and some other cases, I have come to the conclusion that the public use to which the land in question is now devoted, to wit, a highway, is not such a change of the *use* as to justify the plaintiff in taking possession of the land, in default of a new compensation to him. The plank road was a highway. All persons could use it. The land is now used by the public, for a highway, precisely as the public used it when it belonged to the plank road company. The easement, so far as the public is concerned, is the same. The present servitude is no more onerous or injurious to the plaintiff than the former. There is a slight difference as to the public. The plank road company was bound to keep the road in repair, and it was authorized to receive tolls from those who used it. Now the public keeps the road in repair, and its use is free.

It is argued that the statute of 1854, (*Laws of* 1854, *ch.* 87,) is not broad enough to include the case, and to give the use of the road to the town or public. The statute authorizes a plank road company to abandon its road, or portions of it, and specifies the evidence of such abandonment, and provides that thereupon the plank or turnpike road, or the portion thereof so surrendered, shall cease to be the road or property of the company, and *revert* and *belong* to the several towns through which it was constructed. The words are *revert* and *belong* to. I think the statute should be construed as meaning plank roads constructed upon lands, though they had not previously belonged to the town, or been used for highways. Such lands are to pass to the town as highways. In this case the reversion, as argued by counsel, was and still is in the plaintiff, but as the land had been lawfully taken for public use, the title, by the act of the

original taker, and the statute, has passed to the town, the same public use, in substance, being preserved.

The question has been raised as to the duration of this right in the town. Indeed it is argued by the plaintiff's counsel that the plaintiff has a vested remainder in the land, and that the statute, if it gives the land to the town for a highway, has taken from him that vested remainder, and that the legislature cannot do this without compensation. It is undoubtedly a sound position that the legislature cannot take any kind of private property for public use, without just compensation. But can this question arise between the plaintiff and the town, until the expiration of the time limited in the charter of the plank road, for its existence? Waiving this question, however, is it quite clear that the plaintiff had a remainder, which is to come to him at a time certain? I certainly doubt it. The question to which I refer has not been discussed, and I will barely refer to it. The legislature has power to alter, repeal or amend the general plank road act, under which the plank road company now in question was organized. It could undoubtedly so amend the act as to authorize the corporation to prolong its existence; or it could, by an act, extend its corporate existence. Would not such extension carry with it the right to enjoy its lands for public purposes? I think it would. The grantor of the land, at the time he made the grant, made it in reference to the right of the legislature to prolong the existence of the corporation. It is to be noticed that no limitation, as to time, is contained in the grants to the plank road company. But it is not necessary to pursue this question.

I notice that the legislature, as early as 1838, enacted a statute providing that when a turnpike company should become dissolved, or the road discontinued, its road should become a public highway. (*See vol.* 3 *Stat. at Large,* 549.) Cases must have existed where the turnpike company acquired the right of way, outside of highways. No provision is

made for compensation to the original owners. The legislature did not deem it necessary.

As to the entry upon the plaintiff's meadow for the purpose of removing the bridge timbers that had been carried away by the flood, I was of the impression that this entry might be justified under the idea of a right to enter the premises of another to remove the property of the party entering, but I do not find authority for such entry, and counsel have referred to no cases in point. A tender of amends sufficient in amount was made, but I do not understand the statute as embracing the case. It is not a case of " casual or involuntary trespass." The plaintiff must, therefore, have a judgment for these damages, which I assess at $3.

[CHAUTAUQUA SPECIAL TERM, January 14, 1867. *Marvin*, Justice.]