THE BOARD OF TRUSTEES OF THE HOBOKEN CEMETERY ET AL., PROSECUTORS, v. PATRICK R. GRIFFIN ET AL., DEFENDANTS.

Submitted July 1, 1915—Decided November 4, 1915.

1. The various acts of the legislature relating to the Hoboken Cemetery, deprived the governing body of the city of control of the cemetery, and vested the same in a board of trustees elected by and responsible to the lot owners of the cemetery.

2. The board of cemetery trustees so elected are not a part of the municipal government of the city of Hoboken, and are not a governing body in such city, so as to be comprehended within the provisions of the Walsh act, which *ipso facto* upon its adoption in any municipality terminates the existence of the city council or other governing body or bodies and their agents and representatives in such city.

3. The said trustees are not the agents and representatives of the city, but represent the lot owners of the cemetery; the city as donee of the dedication occupying the status of a trustee for the proper administration of the funds entrusted to it.

4. The power exists in the legislature of representing the public for the purpose of regulating and administering a public use, under a dedication to one of its municipalities.

On *certiorari.*

Before Justices PARKER, KALISCH and MINTURN.

For the prosecutors, *Edward Stover.*

For the defendants, *John J. Fallon* and *Horace L. Allen.*

The opinion of the court was delivered by

MINTURN, J.    The commissioners elected in the city of Hoboken, under the provisions of the Walsh act (*Pamph. L.* 1911, *ch.* 221) by resolution undertook to remove from office *inter alia,* the trustees of the Hoboken Cemetery, and to re-appoint as secretary of the board the then incumbent, upon the theory that by the adoption of the Walsh act the terms of all the local government boards and officials *ipso facto* expired, and that it thereby became the duty of the commissioners to assume their duties.

This action was predicated upon the assumption that the cemetery board was comprehended in the language of the second section of the Walsh act, which upon its adoption by any municipality, abolishes "the city council or other governing body or bodies theretofore acting as governing body or bodies in such city." The inquiry as to the legality of this action entails the further inquiry whether the cemetery board was at the time comprehended in the statutory language,

for manifestly if it was not, the action of the commissioners was without legal warrant.

To determine the legal status of the cemetery board, resort must be had to the legislation under which it was constituted and by which it is operated.

Co-eval with the incorporation of the city, Col. John Stevens, in the year 1855, dedicated to the city by a deed of conveyance a plot of ground in the then northeasterly section of the city as a burial ground for the use of its citizens. The plot then dedicated was subject to the control and jurisdiction of the local municipal governing body. The growth of the city necessitated a change of the location of the cemetery, and the legislature by an act approved March 20th, 1857, empowered the mayor and council to sell and convey the dedicated plot, and with the proceeds of the sale, to purchase other lands, or to exchange the same for other lands, and the lands so purchased or exchanged, were by this legislation "set apart forever as a public burial place for the use of the inhabitants of the city of Hoboken." The power to sell the lots in and to exercise care and control over the cemetery, was vested in the city council. The moneys arising from the sale were directed to be paid to the city treasurer, or to such other person as the council might appoint for that purpose. In 1862 by an act approved February 18th, the care, custody, management and control of the new cemetery were vested in the mayor and council of the city, and they were empowered to lay out avenues and walks, and to erect a chapel therein; to sell and convey the lots for burial purposes, and to prescribe proper police regulations for the conduct of the cemetery as well as to provide for the investment of a permanent cemetery fund from the sale of plots, the interest of which was directed to be used in carrying out the purposes of the act. This legislation also provided for the burial of non-residents in the cemetery; and also provided for financing the cemetery and for the creation of "a burial ground fund," and prohibited the mayor and council from using any of the moneys belonging to said fund for any city purpose whatsoever.

The new cemetery was purchased and located in the village of New Durham, at a distance of about four miles from the city of Hoboken, as the city was then constituted. In 1868 the legislature by an act approved March 8th changed the entire government and control of the cemetery by expressly repealing the previous enactments so far as they vested care, control and management of the cemetery in the mayor and council, and transferred the same to a board of six trustees who with the chairman of the council, were constituted "The Board of Trustees of the Hoboken Cemetery." The trustees were to be elected by the lot owners at annual meetings, and the only power which remained in the city *eo nomine,* was limited practically to the signing of deeds by the mayor, and the attestation thereof by the city clerk.

The trustees were authorized to enter into contracts in their name as trustees, and to enforce the same by action in the name of the city, and actions against them were directed to be brought against the city.

The city treasurer was made the custodian of the fund, and was directed to pay all bills contracted by the trustees. The "Cemetery fund" was continued, with the prohibition against using the same for any other than cemetery purposes. The significant phase, however, of this legislation, other than that indicating an entire change of control and management, is indicated in the sixth section of the act, which empowers the trustees to sell lots or plots "to persons other than residents of the city of Hoboken as they may deem advisable."

In 1875 (*Pamph. L., p.* 611), the legislature passed an act enabling the mayor of the city to act as trustee *ex-officio* of the cemetery board, and providing for the submission to the council at stated periods of a report of the receipts and disbursements of the trustees.

It will be observed that the act of 1868 marked an entire change of legislative policy with regard to the control and management of the cemetery. So far as the legislature legally could intervene to divest the city as donee, of management and control of the cemetery, it expressed such an intent, and left to the governing body of the city only the bare form

of corporate ownership. Quite obviously a period had arrived in the development of the original scheme of municipal ownership, when the cemetery was no longer desirable as a physical asset, or as a component part of the city's territory. The change of site to a distant locality was doubtless intended to induce others than residents to become lot owners; and a situation was thus presented which was not contemplated when the deed of dedication was executed.

While the cemetery maintained its status as a place of burial for citizens of the city of Hoboken exclusively, its control, supervision and government by the municipal authorities, as representatives of the donors of the plot, was consistent with its restricted municipal use; but when by force of later legislation, the plot was thrown open to purchasers generally, the reason for local control and supervision ceased.

Therefore in no legal or practical view can the cemetery be considered a municipal asset, or part of the city property; or its trustees the agents or servants of the city; or subject to the changing policies and authority of recurring municipal administrations, so as to be considered a city board, body, or agent, within the language or spirit of the Walsh act.

The city occupies only the legal status of a bare trustee charged with the proper investment of a fund, which it cannot devote to city uses or to any purpose foreign to its legislative designation. The lot owners may be strangers to the city, and in nowise subject to its jurisdiction; while the board of trustees elected by them, owe no duty or obligation to the mayor and council, except such as are expressly stated or necessarily implied in the enactments referred to.

The board of trustees cannot therefore upon any reasonable or practical conception of municipal government, be considered for any purpose a part of the municipality, or connected in any manner with the machinery of local government, so as to be included within the provision of the Walsh act, wherein it is provided, that upon the adoption of its provisions the political and legal life of the city council "or other governing body in such city, shall be *ipso facto*

abolished." Nor can it be reasonably urged that such a body, whose sole business and responsibility are limited to the care and control of a cemetery located miles from the city and its activities, and separated therefrom by independent intervening municipalities, is in the language of the Walsh act, a governing board or body "in such city."

The fact that the dedication of the original cemetery by Col. Stevens was made to the city, probably necessitated the legislative provisions, giving the mayor and council representation in the board of trustees, and a power of supervision over the fund as its legal custodian, so as to preserve in form at least, the scheme of dedication of the grantor.

The same legal reason presumably, induced the provision in the act, constituting the city the party plaintiff or defendant, in all litigation arising out of the action of the trustees.

This feature of the legislation may also be reconciled, as consistent with the general legislative scheme, which constitutes the city the trustee and custodian of the cemetery fund, by reason of the fact that it is the donee in the grant, and therefore the legal representative of the title, as well as of the fund created thereunder.

The power of the legislature to regulate the use in conformity with the intent of the dedication, while preserving and protecting the trust in essence, is settled by abundant authority. *Hoboken M. E. Church* v. *Hoboken,* 33 *N. J. L.* 13; *Chicago* v. *Ward,* 169 *Ill.* 392; *St. Paul* v. *Chicago, &c., Ry. Co.,* 63 *Minn.* 330; *Williams* v. *N. Y. C. R. R. Co.,* 16 *N. Y.* 97; 8 *R. C. L.* 911; 13 *Cyc.* 493, and cases cited.

In such a situation, the legislature is primarily the representative of the public in the first instance, and may regulate the use direct or through the municipality as may seem best in the public interest. *Gleason* v. *Cleveland,* 49 *Ohio St.* 431; *Church* v. *Portland,* 18 *Oreg.* 73.

The case *sub judice* is clearly distinguishable from, and in nowise analogous to, the adjudications of this court concerning the Walsh act to which reference is made in briefs

of counsel. *Hirsch* v. *Burk,* 83 *Atl. Rep.* 979; *Cohn* v. *New Brunswick,* 73 *N. J. L.* 128.

Those cases presented a situation involving the status of subordinate boards or bodies, which concededly were related to, or identified with, city government in its various phases; a situation which presented a legal status which, as we have seen, cannot be ascribed to the case in hand.

The construction we have given to this legislation requires that the resolution in question, in so far as it assumes to vest control of the cemetery in the defendants, and to dispossess the cemetery trustees, must be vacated.