## PLANT *vs.* THE LONG ISLAND RAILROAD COMPANY.

To allow a street in a city to be used for a railroad track, either upon its natural surface, or by tunneling, is not a misapplication of it; provided such use does not interfere with the free and unobstructed use of it by the public, as a highway for passage and repassage.

The temporary inconvenience to which the adjoining proprietors are subjected, while the work of excavation and tunneling is going on, is *damnum abseque injuria,* and will not entitle an individual to damages.

Where the land of an individual is taken for a street in a city, and compensa-

tion is made for it, the city has the right to appropriate the land so taken to all such legitimate uses and servitudes as custom, and the public good, require in respect to a street.

ACTION to recover damages alledged by the plaintiff to have been sustained by him in consequence of the construction of a tunnel, by the defendants, through Atlantic-street, in the city of Brooklyn. The facts are stated in the opinion of the court.

*A. H. Dana*, for the plaintiff.

*H. F. Clark*, for the defendants.

*By the Court*, EDWARDS, J. This action was brought to recover damages for the injury which the plaintiff alledges that he has sustained by reason of the construction of a tunnel, by the defendants, through Atlantic-street, in the city of Brooklyn. The bill of exceptions shows that the plaintiff was the lessee of a messuage and tenement, situated upon said street, for the term of three years, and that during the continuance of his lease the defendants excavated the street for the purpose of constructing the tunnel, and that they were engaged in the work of excavation and construction for several months. It further appears, that during this time the carriage way was laid open, and the passage way upon the side walk was rendered narrow, although it was sufficiently wide for persons to pass and repass. It also appears that the tenement possessed by the plaintiff was occupied as a retail dry good store. And witnesses were called to show that he was injured in his business while the work was in progress. Upon this state of facts the defendants moved for a nonsuit, which was denied by the circuit judge. The defendants then read their charter of incorporation, and the charter of the city of Brooklyn, and also read an ordinance of the common council of said city, authorizing the defendants to construct the tunnel in question. The circuit judge then stated that this ordinance was a justification of the defendants, and a complete defense to the action, unless the plaintiff claimed to recover on the ground that the work was done negligently, unskillfully, or

Plant *v.* Long Island Railroad Company.

improperly; and said that he would so charge the jury. To this decision the plaintiff's counsel excepted, and declined going to the jury on the question of negligence or unskillfulness, and submitted to a nonsuit, with leave to move to set the same aside. The form of the action was trespass on the case.

It will be observed that the damages claimed, are not for any permanent injury; and it is not pretended that the street was impaired or obstructed as a highway, beyond the time necessary for the completion of the excavation. The simple question then before us is, whether the common council of the city of Brooklyn had the power to pass the ordinance under which the defendants acted.

The primary object of a street is, to furnish a free passage to the public. It is for that end, chiefly, that the soil is appropriated to the public use. Such being the case, there seems to be no good reason why the use should be confined to the natural surface of the soil, and why a new surface may not be created for the same purpose, either by tunneling or excavation. If such new surface can be created, it must follow that it can be used in any way in which the original surface could be legally used. And it has been decided by this court in the case of *Drake* v. *The Hudson River Railroad* Co. (7 *Barb.* 508,) that the laying of a railroad track upon a street in a city, is not such an exclusive appropriation of the street as obstructs or impairs the right of passage and repassage; and, in reference to the convenience of the public, is legal.

But that is not the question which arises here; for in this case, the tunnel is appropriated exclusively to the use of the defendants; and the question is, whether the common council of the city of Brooklyn had the right to authorize such an appropriation.

Although a highway in the country is, as a general rule, needed for no other purpose than as a place of passage and repassage, yet the case is different as to a street in a populous commercial city. There are many uses to which streets in large cities are usually appropriated for the promotion of health, trade and commerce, and the public convenience; such as the construc-

tion of drains and sewers, and the laying of water and gas pipes. These are servitudes which are highly beneficial to the public, and in no way injurious to the private rights of individuals. They do not interfere with the surface of the street. They in no manner whatever impair the right of free passage and re-passage. Neither are they injurious to the adjoining property. On the contrary, they are either directly or indirectly advantageous. There can be no doubt that a railroad in a city is calculated to promote trade and commerce, and it is equally clear that the public convenience is promoted by its being constructed in such a manner that it can in no way interfere with the ordinary modes of conveyance. If such be the case, we can see no good reason why it is a misappropriation of the street to allow it to be tunneled for a railroad, any more than it is to allow it to be excavated for sewers, or water or gas pipes.

It is not denied, that to a certain extent the common council of the city of Brooklyn have the legislative control over its public streets. And they are expressly authorized to make and establish all such ordinances, by-laws, and public regulations, not contrary to the constitution and laws of the state, as may be proper for the good government and order of the said city, and its inhabitants, and the regulation of the trade and commerce of the city. (*Laws of* 1834, *ch.*92, *p.* 100, § 27.) It is under this general power that they may create or authorize these urban servitudes, to which the streets in large cities are usually appropriated. And if the work in question is beneficial to trade and commerce, it would seem to be within the province of the common council to authorize its construction.

It is said, however, that this power is qualified by that provision of the constitution, which requires that compensation shall be made to the owner of private property taken for public use.

As far as we are aware, it has not been customary in this state, where the streets of cities have been appropriated to legitimate public uses, for the promotion of health, trade or commerce, to make compensation to the owners of adjoining lands. The reason of this, undoubtedly is, that the streets are laid out for such purposes, as well as for highways ; and when the property

of individuals is taken for streets, and the city makes compensation for the property so taken, it purchases and pays for the right to appropriate the land to all such legitimate uses, as custom and the public good require that a street should be appropriated to.

But admitting that the street in question could not be used in the manner in which the common council of the city of Brooklyn authorized the defendants to use it, without compensation being made to the owners of the adjoining land, or their consent being obtained; it does not appear that there has not been in this case, such compensation, or consent. The general maxim of the law is, *omnia presumuntur rite esse acta;* and how can we presume the contrary in this case?

But, again; suppose that no compensation has been made to the owners of the adjoining lands, and no consent has been obtained from them, how can the plaintiff take advantage of it in this suit? He does not claim damages for trespass upon land owned or possessed by him; nor for an injury done to the soil in front of his lot. He claims consequential damages for injury alledged to have been done to his business, arising from the obstruction of the street along the whole extent of the excavation. If this be an injury, it is one which a person not living upon the street might have sustained equally with the plaintiff.

There were two cases cited upon the argument, which, it was contended, sustained the claim set up by the plaintiff. (*Fletcher* v. *The Auburn and Syracuse Railroad Co.,* 25 *Wend.* 462. *Trustees of the Presbyterian Society of Waterloo* v. *The Auburn and Rochester Railroad Co.* 3 *Hill,* 567.) In the first of these cases, the declaration alledged that the defendants had caused an embankment of the height of four feet to be made upon and across a street near the messuage and garden of the plaintiff; and that by reason thereof he could not have and enjoy his right of free and unobstructed passage and repassage unto and upon the street to and from his garden and messuage, and was deprived of the use of the street; and besides that, his messuage was, by reason of the embankment, frequently inundated with water, &c. The defendants justified, under their

Plant *v.* Long Island Railroad Company.

charter of incorporation, which authorized them, whenever it should be necessary, to intersect or cross any road or highway between the villages of Auburn and Syracuse; to construct their railroad across the same; but that they should restore the road or highway thus intersected, to its former state, or in a sufficient manner not to have impaired its usefulness. They then averred the necessity of intersecting the street, and that they restored it to its former state, in a sufficient manner not to have impaired its usefulness. To this plea the defendant demurred, and the court held that the meaning of the provision of the charter upon which the defendants relied was, "that the road was to be restored to its former state, or in a manner not to impair its usefulness; that is, in such a manner that the public might continue to enjoy it as before." But they held that if, when thus restored, the plaintiff was deprived by reason thereof of any right which he previously possessed, or was subjected to any injury, he was entitled to damages. If the plaintiff in the case before us had claimed damages because the defendants, after they had finished the construction of the tunnel, had placed the street in such a condition, that his use of it was permanently obstructed by a change of the grade, and his messuage injured by the flow of water caused by such permanent change, the case would have been analogous to the one cited.

In the other case relied upon by the plaintiff, the defendants constructed their railroad upon the highway in front of the plaintiff's premises, without his permission, and without making compensation to him; and the plaintiff sued them in trespass. The court there held that the plaintiff was the owner of the soil of the highway, subject only to the public easement, and that the defendants could not use the highway for a railroad track, without making compensation. But this case also differs from the one before us. In the first place, the action was trespass for injury to the soil of the plaintiff. The soil which was appropriated by the defendants, was a highway in the country. If the suit had been brought by a tenant of the premises not adjoining the railroad, for consequential damages accruing from the temporary obstruction of the highway while the defendants

were laying their track, the ruling of the court would, probably, have been different; particularly if it had not appeared that the railroad was made without the consent of, or compensation to, the owner.

The conclusion, then, to which we have arrived is, that the defendants, from aught that appears in the bill of exceptions, were, as regards the public at large, authorized to construct the tunnel in question; and that, if the defendant has been injured by the temporary inconvenience to which he, as well as others may have been exposed, during the continuance of the work, there being no complaint of negligence, or unskillfulness, it is a case of *damnum absque injuria,* and the plaintiff is not entitled to damages.

The motion for a new trial is denied.

