CHARLES KELSEY, APPELLANT, *v.* GAMALIEL KING AND OTHERS, RESPONDENTS.

[In this case though all the judges concurred in the result, there was no concurring majority as to the grounds upon which the judgment was rendered.]

*W. Brittin* for Appellant.

*A. McCue* for Respondents.

DAVIES, CH.J.—This action was commenced in the City Court of Brooklyn, for the purpose of restraining the Defendant from constructing a sewer in a certain street in that city called Butler street, and from interfering with, or molesting the Plaintiff in the use and enjoyment of the territory comprised in the south half of said street, and that certain proceedings taken to open said Butler street be declared null and void.

The Plaintiff claimed in his complaint that he was the owner of the fee of the south half of said street, and avers that prior to the proceedings therein mentioned, the same had been dedicated to the public as a public street by this Plaintiff, and because thereof he was awarded, by the Street Commissioners, for his damages on the pretended opening of said street as aforesaid, nominal damages only.

By an act passed April 16, 1859, a board of commissioners, called Sewer Commissioners, were organized in and for the city of Brooklyn, and, by the third section of said act, the said board was authorized to take proceedings " to acquire land and interest therein, for the construction and maintenance of sewers, where such sewer is proposed to be run through lands which are not part of a public street or place."

The complaint also avers that said Commissioners prepared a plan for sewerage in said city, which provided for a sewer in said Butler street; that said Plaintiff objected to said plan, among others, on the ground that the said street had not been opened, and that the location of said sewer in that street would involve

the necessity of opening the same, by which was evidently meant that the land embraced therein had not been taken for public use and compensation made therefor.

That thereupon the said Commissioners presented a petition to the Supreme Court, for the appointment of commissioners to open said street.

The proceedings taken to open said street are also set forth in the complaint, and it was claimed that all said proceedings were illegal and void. The Judge who tried this action without a jury, found the following facts:

1. That Defendants King, Frank, Northrup, and Lewis, are the Sewer Commissioners of the city of Brooklyn, duly appointed under the acts of the Legislature, passed April 15, 1857, and April 16, 1859, and that the Defendants herein, Kenny and Halliday, at the time of the commencement of this action, were engaged in the construction of a main sewer in Butler street, between Columbia street and the East River, in said city, under a contract for that purpose entered into between them and said Commissioners on the part of, and in the name of the city of Brooklyn.

2. That said Commissioners, under the provisions of the aforesaid acts, established a plan of drainage and sewerage for that part of the city of Brooklyn embracing Butler street from Columbia street to the East River, and on the 21st day of December, 1859, filed a map of the district, containing the same, as required by said acts, on which said map the said sewer, as aforesaid, was designated as a main sewer.

3. That a main sewer through said street as aforesaid, was, in the judgment of said Sewer Commissioners, necessary and proper, and was by them in good faith so determined to be.

4. That neither at the time of filing said map as aforesaid, nor until the proceeding for opening said Butler street, as thereinafter specified, had said street been opened, but that said Butler street was laid out as a public street and highway, upon the Commissioners' map of the city of Brooklyn, duly filed.

5. That on the 15th day of December, 1859, said Commissioners

presented their petition to the Supreme Court, for the appointment of Commissioners to open said Butler street. That a notice of said intended application was given under section 8 of said act of April 15, 1857, and that on the 16th of December, 1859, three persons were appointed said Commissioners, and that copies of said petition, notice of said intended application and order appointing said Commissioners, were annexed to said complaint.

6. That said Commissioners for the opening of said street proceeded to make up their report in said matter, and presented the same for confirmation to the Supreme Court in July, 1860. That said Plaintiff objected to the confirmation of said report, but that said report, then and there confirmed and annexed to the answer, was a true copy of said order of confirmation.

7. That, prior to the proceedings of said Commissioners to open said street as aforesaid, the same, as far as the interest of the Plaintiff's sewer is concerned, *had been dedicated to the use of the public as a public street* by said Plaintiff, and because thereof he was awarded, by said Commissioners on their said proceedings to open said street, nominal damages only.

8. That at the time of the commencement of this action, the Plaintiff was a resident and property holder and owner in the city of Brooklyn; that he owned at the time of the opening of said street as aforesaid, and had during several years preceding owned a majority in interest upon that portion of Butler street thereinbefore mentioned, being the south half of the said portion of the said street; that his property was within the district of assessment fixed upon by the Commissioners who made the opening of said street as aforesaid; that Plaintiff now owns the fee of the south half of said portion of said street as aforesaid, subject only to the rights of the public, acquired by the opening of said street as aforesaid.

And as conclusions of law, the judge found:

1. That said Butler street was, at the time of the construction of said sewer by the Defendants, a public street and highway of the city of Brooklyn, and had been regularly opened according to law.

2. That the Plaintiff had no cause of action against said De-

fendants, or either of them, and is not entitled to the relief prayed for in the complaint.

3. That the Defendants are entitled to judgment in their favor against said Plaintiff, dismissing the complaint with costs.

Judgment accordingly for the Defendants was affirmed at the General Term, and the Plaintiff now appeals to this Court.

If the Defendants had no legal right to use the street in question for the purpose of constructing a sewer therein, it is made a question whether the Plaintiff has resorted to the proper remedy to enforce the rights claimed by him. But it is not important to pass upon that question in the present case, in view of the conclusions arrived at.

The parties have sought to obtain a decision upon their respective legal rights, without specially insisting whether the proper remedy has been adopted for ascertaining them.

It will be convenient to ascertain, in the first place, what rights the public acquired in the lands of the Plaintiff from the dedication thereof. It is found as a fact in the case " that said street had been dedicated to the use of the public as a public street by the Plaintiff."

A street is another name for a road or highway in a village or city (2 Bouvier's Law D. 547; 4 Sergt. & Rawle, 106.)

In the latter case, Ch. J. Gibson says : "In common parlance the word street is equivalent to highway." This street was therefore dedicated to the use of the public as a public highway. The Plaintiff, by this act, only granted to the public the right to use this land as a public highway, and retained to himself the fee of the land, and all other rights appertaining thereto, subject to such easement or servitude.

" It is not necessary, in order to effectuate a dedication, that the owner of the land dedicated should part with the fee of the same. Nor is it inconsistent with an effectual dedication, that the owner should continue to make any and all uses of the same which do not interfere with the uses for which it is dedicated" (Washburn on Easements, p. 137, and cases there cited).

" A highway," says Swift, J., in Peck *v.* Smith ( 1 Conn. Rep.

132), "is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all the acts necessary to keep it in repair. This easement does not comprehend any interest in the soil, nor give the public the legal possession of it."

The use of the highway, by any person for any purpose other than to pass and repass, is a trespass upon the person who owns the fee of the road (1 New Hamp. Rep. 16; Babcock *v.* Lamb, 1 Cowen, 238; Jackson *v.* Hathaway, 15 John. 447; Adam *v.* Rivers, 11 Barb. 390). In the latter case, Willard, J., says : "The public have no need of the highway, but to pass and repass. If it is used for any other purpose not justified by law, the owners of the adjoining land are remitted to the same rights they possessed before the highway was made. They can protect themselves against such annoyances, by treating the intruders as trespassers." But the rights of an owner of land dedicated to the public use were settled by this Court in the case of Williams *v.* N. Y. Central Railroad Co. (16 N. Y. 97). It was then held that "the dedication of land to the use of the public as a highway, does not preclude the owner of the fee, subject to the public easement, from maintaining an action against a railroad company, which, without his consent, or an appraisal of his damages, enters upon and occupies such highway, with the track of its road."

The opinion of the Court in this case received the concurrence of six Judges of this Court ; and the rule, *stare decisis*, precludes us from questioning its binding character as an authority in point.

Selden, J., in his able and elaborate opinion in this case, says : "It is conceded that, by the dedication, the public acquired no more than the ordinary easement or right to use the premises as a highway, and that the Plaintiff continues the owner in fee, in respect to the unsold lots, to the centre of the street, subject only to this easement; but it is contended that the taking and use of the street by the railroad company does not encroach upon the reserved rights of the Plaintiff, because the use of a street for the purposes

of a railroad is only 'one of the modes of enjoying the public easement.'"

The learned Judge proceeds then successfully to combat this doctrine, and after a review of the cases says, in reference to this question: "Is this sound doctrine? Is it true that one who dedicates land for a highway or street dedicates it to the public use without restriction? I apprehend it is an assumption wholly unfounded, and contrary to a multitude of cases, in which it has been held that the public acquire nothing beyond the mere right of passing and repassing upon the highway, and that in all other respects the rights of the original owner remain unimpaired. I will not dwell longer upon this case, as it will not be seriously, and cannot be successfully, contended either that the dedication of land for a highway gives to the public an unlimited use, or that the Legislature have the power to encroach upon the reserved rights of the owner by materially enlarging or changing the nature of the public easement." It was urged in that case, as it is in this, that it is convenient to use the public highway for the purpose indicated, and that it is for the interest of the public that it should be so used. This argument is met and conclusively answered by Judge Selden, as follows: "It is the public interest supposed to be involved which begets the difficulty; and it is just for this reason that the constitution interferes for the protection of individual rights, and provides that private property shall not be taken for public use without compensation; a provision no less necessary than just, and one which it is the duty of the Courts to see honestly and fairly enforced."

It is urged upon us with earnestness that the doctrine of this case has been impaired, if not overruled, by the subsequent case in this Court of The People *v.* Kerr (27 N. Y. 188).

An examination of that case will show that there is no ground for such an assumption. That in that case was controversy as to the legislative power and control over the streets of the city of New York, and whether it could lawfully authorize a railroad to be laid upon the surface of such streets, and to be used for the propelling of cars thereon, without compensation to the owners

of lots abutting on and fronting on said streets. The finding in that case established for all purposes therein, that the city of New York is seized *in fee* of the land in all streets in front of the respective lots of the Plaintiffs in that action, *in trust,* to keep the same open and used as streets, in part by legal proceedings, and in part by dedication or cession.

The only question, therefore, decided in that case was, that as to streets thus held in trust by the Corporation of New York for the use of the public, it was competent for the Legislature or the sovereign authority of the State to declare and define the uses and purposes of the trust; and it was therefore held that the trust of the city being *publici jures,* it was under the unqualified control of the Legislature; and any appropriation of it to a public use by legislative authority was not a taking of private property so as to require compensation to the city, or to the owners of lots fronting on the street, to render it constitutional. Emott, J., in the opinion delivered by him, says: " In the case of an ordinary highway, all which the State or the public obtain by their dedication or opening is said to be an easement of a limited character.

All but this remains in the original owner or his assigns, with all its incidents, subject to no restrictions or adverse rights, except this right of passage by the public. Every right of use and ownership, and every right of action for an interference with either, which is not inconsistent with the free and common use of a highway, still belongs to the original owner of the soil. If the highway is closed, or the public rights relinquished, the land at once reverts in full and entire dominion."

" Such is the rule which has been applied to all titles acquired by the legislative appropriation of property to public or *quasi* public uses."

The authorities are uniform that by dedication for purposes of a public highway, no rights are acquired by the public, except those of passage and repassage over the surface of the soil, and such as are incident thereto (Pearsall *v.* Post, 20 Wend. 111; ib. S. C., 22 Wend. 425; Jackson *v.* Hathaway, 15 Johns. 447; Cortelyou *v.* Van Brundt, 2 ib. 361; Stackpole *v.* Healy, 16 Mass.,

33; Perley *v.* Chandler, 6 ib. 454; Trustees, &c., *v.* Auburn and Rochester R. R. Co., 3 Hill, 567).

In Pearsall *v.* Post (*supra*, 2 Cowen, J.131), the Court says : " The relative rights, both of owner and passenger in a highway, are perfectly understood and familiarly dealt with by the law. Subject to the right of mere passage, the owner of the soil is still absolute master." And at page 133, quoting a case from 3 Watts, 219 "the franchise of the public was to pass over the soil, and no more ;" and, " The amount of these cases is, that roads are made to be travelled on, and not to be occupied." And in the case in 3 Hill (*supra*), the Court says : " They (the public) acquired no interest greater than a right of way, with the powers and privileges incident thereto. Subject to this easement, and this only, the rights and interests of the owner of the fee remain unimpaired." Chancellor Kent says : " They (the owners) may carry water-pipes under the highway, and have every use and remedy that is consistent with the servitude or easement of a way over it, and with police regulations " (3 Kent Com. 433). The learned author on easements already referred to (Washburn) at p. 196, lays down this doctrine : " So the owner of the soil of a way, whether public or private, may make any and all uses to which the land can be applied, and all profits which can be derived from it, consistently with the enjoyment of the easement. He may, as before stated, maintain ejectment to recover the land, and if the way is discontinued, he holds it again free from encumbrance. He may sink a drain or a watercourse below the surface, if he do it so as not to deprive the public of their easement." Citing the following cases : Perley *v.* Chandler (6 Mass 454); Green *v.* Chelsea (24 Pick. 71); Pomeroy *v.* Mills (3 Vt. 279); Lade *v.* Shepard (2 Strange, 1,004); Adams *v.* Emerson (6 Pick. 57); Atkins *v.* Bordman (2 Mect. 457). These cases fully sustain the doctrine of the text.

In the latter case, Ch. J. Shaw observes :

" The owner of an estate or fee, by virtue of his interest and power as proprietor, may make any and all beneficial uses of it, at his own pleasure, and he may alter the mode of using it by

erecting or removing buildings over it, or digging into or under it, without restraint. *Cujus est solum, ejus est usque ad cœlum.* If any other person has an easement in it, the owner has still all the beneficial use which he can have consistently with the other's enjoyment of that easement. If the easement is a right of way, this consists in a right to use the surface of the soil for the purpose of passing and repassing, and the incidental right of properly fitting the surface for that use ; but the owner of the soil has all the rights and benefits of ownership consistent with such easement. All which the person having the easement can lawfully claim, is the use of the surface for passing and repassing, with a right to enter upon and prepare it for that use, by levelling, gravelling, ploughing, or paving, according to the nature of the way granted or reserved; that is, for a footway, a horseway, or a way for all teams or carriages."

It would therefore seem to be most clearly settled by an unvarying current of authority, that in this act of dedication of this land to the public as a public street, the Plaintiff still continued the owner of the fee of the soil therein, and entitled to all the benefits and advantages resulting therefrom, subject to the easement granted to the public. We have seen what the nature of that easement is, and no case has been found in the books, which warrants the assumption, that by virtue of it, the soil of the street can be dug up or removed, or that the same can be occupied for any other purpose than a public highway. All the cases referred to negative any such position.

But it is urged that a dedication of a piece of land, in a village or city, to the use of the public, for a street or highway, grants a more extensive interest in the soil than a similar dedication not within those localities, and authorizes the use by the public of the land so dedicated for any purpose whatever.

This idea seems first to have been suggested by one of the Senators, in the case of Pearsall *v.* Post (*supra*), and was adopted and amplified by a learned Justice of the Supreme Court in the case of Plant *v.* Long Island Railroad Co. (10 Barb. 26).

In referring to this case, the reasons given for the use of streets in cities for all purposes which may be found convenient and useful, are that such streets have been taken and paid for. No allusion is made to the case of a dedication of land to be used as a public street or highway, and such a case is neither within the reason or the doctrine of Plant *v.* Long Island Railroad Company. Judge Edwards says : "As far as we are aware, it has not been customary, in this State, where the streets of cities have been appropriated to legitimate public uses for the promotion of health, trade, or commerce, to make compensation to the owners of adjoining lands. The reason of this undoubtedly is, that the streets are laid out for such purposes *as well as for highways ;* and when the property of individuals is taken for streets, and the city makes compensation for the property so taken, it purchases and pays for the right to appropriate the land to all such legitimate uses as custom and the public good require that a street should be appropriated to." It is clear, therefore, that the remarks of the learned Justice, and which were quoted and approved of in the opinion in this case, had reference solely to streets in cities, the fee of which had been taken, by due process of law, and vested in the public authorities, and compensation made therefor. The street cases of New York are not, therefore, in point, and the principles adjudicated in them furnish but little aid in solving the question presented in this case. It was well said of these in the case of Bissell *v.* N. Y. Central Railroad Co. (23 N. Y. 61), that they "came before the Court in a summary way, upon application to confirm or set aside the assessments, and ought not to be regarded as so high evidence of the law as judgments of the Court pronounced after a full trial in an action according to the course of the common law."

Again, this latter case is an authority for another principle, not to be lost sight of, namely : that in continuing the effect of a dedication of land for a public street or highway, the same rules are to govern, whether it be for a highway in a village or city. It was said in the opinion in that case, that there was another very objectionable feature to those street cases, namely : that "they seem

to have inculcated the idea that there was a different rule of construction to be applied in such cases to a deed of land in a city, from what there is to such a deed in the country. Such a doctrine,"continued Judge Mason in the opinion, " I affirm, has no foundation in principle, and will not, I apprehend, find any favor with this Court."

The dedication, therefore, by the Plaintiff of the land comprised in Butler street to the use of the public as a public street, did not authorize the Defendant to enter upon that land for the construction of a sewer therein.

It remains to be considered what rights they acquired by the proceedings had and taken under the acts of April 15, 1857, and April 16, 1859. The constitution of this State declares that private property shall not be taken for public use without compensation, and that when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law. In the present instance the law prescribed the manner of ascertaining the compensation to be made for acquiring the lands of Butler street and any interest therein, for the construction and maintenance of sewers. An application was made pursuant to statute to a court of record which appointed these commissioners, who proceeded to ascertain and fix the compensation to be paid, and upon due hearing, this Plaintiff having his day in Court and being heard in opposition thereto, the Court confirmed the report of the commissioners, and thereupon the compensation to be paid this Plaintiff for his interest in Butler street, for the construction and maintenance of sewers, became fixed and ascertained. Such confirmation becomes final, and the City Comptroller of Brooklyn is authorized by law to pay, on such confirmation, to the persons to whom damages may have been awarded in such report, the amount of such damages (§ 16, Charter of Brooklyn ; Laws of 1850, p. 270).

It is believed that it has been satisfactorily shown, that the Plaintiff, notwithstanding the dedication of the land of Butler

street to the use of the public, for a public street, still had and retained an interest in the soil thereof, subject to such covenant, and that the land so dedicated could only be used for the purpose of a public street or highway.

It is manifest that the corporate authorities of Brooklyn were of the same opinion, for they proceeded, pursuant to statute, to ascertain the damages the Plaintiff would sustain, and the compensation to be made to him for the use of said land for the maintenance and construction of sewers therein.

That compensation has been ascertained in the manner provided by law, and this Court in this action cannot review that adjudication, or institute an inquiry into the principles upon which it was made. We are to assume it was a joint compensation, and if the commissioners erred in fixing the amount to be paid at too small a sum, it is now too late to correct the error.

The interest of the Plaintiff in the soil of Butler street has been taken in the manner prescribed in the constitution and by statute for the purpose of maintaining and constructing sewers therein, and he was not therefore entitled to an injunction to restrain the Defendant from proceeding to construct such sewer.

On this ground the judgment of the Supreme Court was correct, and should be affirmed with costs.

All the Judges concur in the result, but there is no concurring majority as to the grounds upon which the judgment is to be rendered.

JOEL TIFFANY,
State Reporter.
