BENJAMIN A. MERRILL, Appellant, *v.* ENSIGN L. CALKINS
et al., Respondents.

.M. being the owner of a farm, upon which was a spring, deeded a portion
thereof to C., with "the privilege of raising the water *at* the spring"
and carrying the same to the premises conveyed, in such quantities as
should be necessary to supply a tannery to be erected on the premises,
or for other necessary uses thereon, reserving to M. water neces-
sary for the uses of his farm. Plaintiff, who succeeded to the rights
of C., built a dam upon land formerly a part of the farm, twenty-
five feet below the spring, the intervening space being used as a pond
to retain the waters from the spring and also of other springs above,
the effect whereof was to flood the spring and to render the water unfit
for domestic purposes. In an action to recover damages for tearing·
down the dam, and for an injunction, *held,* that plaintiff's right to raise
the water was confined to the spring itself; that he had not the right to
flood other land, still less to intercept the water from other sources,
using defendants' land for accumulating and holding it, nor had he the
right to impair the character of the water; that, therefore, plaintiff was
not justified in building the dam and could not maintain his action.
It *seems* that the reference in said deed to the erection of a tannery did not
limit the use of the water to that purpose, but would be regarded
simply as a criterion to measure the quantity.

(Argued April 25, 1878; decided May 21, 1878.)

APPEAL from judgment of the General Term of the
Supreme Court in the fourth judicial department, affirming

SICKELS. VOL. XXIX.     1

a judgment in favor of defendants, entered upon the report of a referee. (Mem. of decision below, 11 Hun, 495.)

The action was brought to recover damages for tearing down and removing part of a dam erected by the plaintiff and for an injunction.

The plaintiff owns a village lot on the east side of Furnace street, in Wolcott, nearly opposite a spring of water on premises situated on the west side of the street, belonging to the wife of defendant Calkins. On and prior to May 12, 1821, Jonathan Melvin owned a large tract of land, including both parcels above mentioned. On that day he deeded to William Clark the lot now owned by the plaintiff, described by metes and bounds, "and also the privilege of raising the water at the spring above mentioned and conveying the same in such a direction as may be most convenient to the premises conveyed by said deed, in such quantities as shall be necessary to supply a tannery which shall be hereafter erected on the premises above described, and for such other uses on said premises as may be necessary, nevertheless reserving to the said Melvin water forever, necessary for the uses of said Melvin's farm." The plaintiff derived title from Clark. Mrs. Calkins claimed through a deed executed by Melvin subsequent to his deed to Clark. The spring in question is about twenty-five feet west of the highway and issues out of a bank forming the westerly boundary of a basin about two rods wide, extending from a point twelve or fifteen rods south of the spring to the highway. South of said spring are other springs in said basin, the waters of which flow in a northeasterly course, and after uniting with the water from the spring in question, discharge in a natural channel under the highway and across the northwest corner of the plaintiff's premises. There never was a tannery on the plaintiff's lot, and the waters of the spring were never raised, or conducted to his premises except by their natural channel save as hereafter stated. In the summer of 1876, the plaintiff built a dam about thirty inches in height across the basin at the west line of the highway and be-

low the point where the waters from the spring in question run into the stream from the springs above, and thereby obstructed and raised the water from all the springs, and overflowed the spring in question and about five or six square rods of Mrs. Calkin's land.    The spring was thereby filled with mud and sediment, and its water was rendered unfit for domestic use, but continued fit for watering animals.    Shortly before the dam was built, Calkins, acting for his wife, filled in part of the basin, without interfering with the spring or the stream issuing from it, and he proposed to fill in the whole basin and brick around the spring, but not to change the flow of the water.    Soon after the dam was made, Calkins tore down a part of it, sufficient to let the water flow through as it had done before, which is the trespass complained of.

*Wm. Roe*, for appellant.    Plaintiff was clearly entitled to such damages as he had sustained by reason of the trespass of defendant Calkins in tearing down his dam.    (Ang. on Water-courses [6th ed.], 201, § 116; Hil. on R. P. [4th ed.], 208, § 5; *Cromwell* v. *Selden*, 3 N. Y., 253.)    Plaintiff was entitled to a permanent injunction restraining defendants from further tearing down the dam, filling up the basin and destroying his privilege.    (*West Point Iron Co.* v. *Regwart*, 45 N. Y., 703; *Corning* v. *Troy I. and N. Factory*, 40 id., 206, 207; *Tyack* v. *Bromley*, 4 Ed. Ch., 258; *Palmer* v. *Foley*, 45 How., 119; *Carpenter* v. *Gwynn*, 35 Barb., 395, 404; *Tribune Assn.* v. *Sun*, 7 Hun, 175, 179.)

*Anson D. Wood*, for respondents.    The grant was the precise measure of plaintiff's rights.    (*Bliss* v. *Greeley*, 45 N. Y., 671.)    By the terms of the grant plaintiff could only raise the water at the spring.    (*Emons* v. *Turnbull*, 2 J. R., 313; *Cortelyou* v. *Van Brunott*, id., 357; *Tabor* v. *Bradley*, 18 N. Y., 109; *Comstock* v. *Johnson*, 46 id., 615; *Torrence* v. *Conger*, id., 340.)    Plaintiff could not rightfully complain of the acts of the defendant Calkins.    (*Waffle* v. *Porter*, 61 Barb., 130; *Trustees, etc.*, v. *Yeomans*, 50 id., 316.)

CHURCH, Ch. J.　Every presumption is in favor of the correctness of findings of fact by a court or referee, and especially should this presumption be indulged when, as in this case, it appears that all the evidence given on the trial is not contained in the record.　The plaintiff is entitled to the right and privilege to the spring and water flowing therefrom, which was granted by Melvin to Clark, by deed, in 1821. All other rights and title to the spring remained in Melvin, the remote grantor of Mrs. Calkins.　The grant from Melvin to Clark is in these words: "And also the privilege of raising the water at the spring above mentioned, and carrying the same in such a direction as may be most convenient to the premises above mentioned, in such quantities as shall be necessary to supply a tannery which shall be hereafter erected on the premises above described, and for such other uses on said premises as may be necessary, nevertheless reserving to the said Melvin water forever necessary for the uses of said Melvin's farm."　The reference to the erection of a tannery does not limit the use of the water to that purpose, but should probably be regarded as a criterion by which to measure the quantity, and the reservation of water necessary for Melvin's farm would, perhaps, receive the same construction, so that, as to quantity, the grantee would be entitled to that granted, unless the taking of such a quantity would diminish the supply below the necessities of the farm.　It is, however, unnecessary to determine this point, as there is in this case no controversy about the quantity of water to which the parties are entitled.

The principal question involved is whether the means of utilizing the water adopted by the plaintiff were fairly within the right granted to him.　The grant is, to a certain extent, restrictive as to the manner of making the water available.　It limited the right of raising the water to doing it *at* the spring.　The spring is twenty-five feet west of the highway, dividing that lot from the land of the plaintiff, and the dam erected by the plaintiff was on the west line of the highway, the intervening space of twenty-

five feet being used as a pond to retain the water flowing
from this spring, and also from springs above. The effect
was to flood the spring, and render the water unfit for
domestic purposes. It is claimed that the plaintiff was jus-
tified under the general rule, that the grant of a thing carries
with it such incidental rights as are necessary to make it
effectual for the purposes intended, and that this was a legiti-
mate means of raising the water *at* the spring. The clause
must have a reasonable construction, and there is nothing in
the language or in the circumstances indicative of an intent
on the part of Melvin to grant the right to flow his land.
The right to raise the water *at* the spring is a right to increase
the height of the water, and is, I think, necessarily confined
to the spring itself. The evidence implies at least that this
may be done without flooding any land. The effect would be
to increase the head, and render it perhaps more available to the
plaintiff, and for aught that appears would give the plaintiff
all the water necessary for his use ; at all events it would give
him all that was granted. The right to flood other land was
not expressly, or by implication, granted. Suppose the basin
was twenty-five rods instead of twenty-five feet wide, under
the construction claimed that space might be used as a pond
by the plaintiff, because the effect would be to raise the
water *at* the spring, which he had a right to do. Such a
construction is inadmissible. Still less had the plaintiff a
right to intercept water from other sources, and use the
defendants' land for accumulating and holding it. Nor had
he a right to impair the character of the water. After his
grant Melvin had the first right to sufficient water for the
uses of his farm, then his grantee Clark could take the quan-
tity granted to him, all the rest belonged to Melvin. Neither
Clark nor any of his grantees had any right to do anything
to render the water impure or less valuable for any purpose
than it was naturally. Mixing other and less pure water
with it was an interference with the rights of the owner of
the spring, and was unauthorized. No such right was ever
granted. The plaintiff, if he desired to raise the water in

the spring, was bound to do so at the spring, with as little injury to the defendants' land as practicable, and without impairing the rights to the spring, which were not granted. The learned counsel for the plaintiff urged that the action should be maintained to restrain the filling up by the defendants of the basin around the spring, and bricking up the spring, as one of the defendants had threatened to do. The answer to this position is that there is no finding that anything which the defendants, or any of them, have done or threaten to do will, in any manner, interfere with the right to water granted to the plaintiff, and findings are never implied for the purpose of reversing a judgment. Besides, it is affirmatively found that the filling in of the basin has not interfered with any right of the plaintiff to the enjoyment of which he was entitled under the grant. If the facts had been found in favor of the plaintiff upon this part of the case, the legal conclusion claimed would doubtless be correct.

We concur with the views expressed at General Term, and the judgment must be affirmed.

All concur, except ANDREWS, J., absent.

Judgment affirmed.