Sedgwick, J.
On the evidence the value of plaintiff’s house has been much lessened by the smoke, ashes and hurtful and offensive gases, that have poured from the defendant’s engine-house, the engine-house of the Hew York Central Railroad, and from the engines generally on the tracks near the house. They have made the house uncomfortable and unhealthy for habitation. The solid parts of the smoke fall in the inside of the house, keep it dirty, mar its appearance, and substantially injure it and the furniture. They have made the air of the- house unpleasant and *33 unwholesome. The value of the house has. been affected also by the railroads in their general effects, and by the great fall in the prices of real estate of late years. What portion of the total diminution of value is to be assigned to the defendant’s engine-house, would be difficult to assess, if it could be assessed at all. This difficulty would not prevent the plaintiff’s having the protection in the future of an injunction, if the defendant has contributed to the acts from which she suffers, and if what it has done is a wrong to the plaintiff. Unless the defendant has been authorized by the legislature, to place the engine-house where it is, it seems clear that it is guilty of a wrong, but if the legislature has authorized it, it cannot be held responsible for the consequences of a legal act. Of course the acts on which the defendant justifies do not absolve it from the duty of using care and skill, in the construction and management of the engine-house, to prevent unnecessary damage to the dwellings near by. The burden of proving neglect in this respect, is upon the plaintiff. The testimony fails to show that any practicable change in the construction of the house or of its management, could be made so as to obviate the nuisance and lessen the damage.
In fact, the question is, does section 6 of the act of March 29, 1848, authorize the defendant to maintain the engine-house, upon the land where it now is. That section declares that “the New York and New Haven Rail Road Company,” to whose power the defendant has succeeded, “is hereby authorized to enter upon and run their cars and engines” . . . “over the road of the New York and Harlem Railroad Compan37” . . . and “to take, transport and convey persons and property upon the said Harlem Railroad, etc. ” Plaint the legislature here authorizes the run-ling to and fro of defendant’s engines. Its power to *34 give this right is not questioned, nor is it questioned that whatsoever is necessary to the practical enjoyment- of this right has been impliedly and competently granted by the legislature. Between the trips to and from, the engines must remain for a time upon some place off from the tracks used for running, and should be under covering. An engine-house, or something of its kind, is therefore a necessary incident in the use of the franchise. The only objection made at this point by the learned counsel for the plaintiff is, that the implied authority to use an engine-house is not general, or at any convenient place to be chosen, even carefully, by the defendant, but it is confined by the terms of the act, properly construed, to the engine-houses and equivalent provisions of the Harlem road or its successors in right. The argument is, that the right to run being confined to running over the road of the Harlem Railroad Company, and as far into the city as the Harlem road may extend, the incidents of that right are meant to be confined to the -use of such appurtenant structures or conveniences, as the Harlem road employs for the purpose of aiding its running.
I do not understand that the plaintiff’s counsel claim that the defendant’s engine-house is an unlawful structure, because, as they insist, the defendant has not legal capacity to acquire title to the land on which it stands ; but the claim is that the want of that capacity and the fact that the engine-house and its land are not owned by the Harlem Railroad, show that the defendant is not exercising the incidental right intended by the act. I do not think that the legal capacity of the defendant to take title to the land on which the engine-house stands is in question. All would agree that it has. the right to use real estate to the extent that is necessary while the engines are waiting and getting ready to return. The question *35 is, must the real estate on which the engines are to stand belong to the Harlem Railroad, or must the shelter or engine-house be such as the Harlem road previously used for the purpose. If it may be other real estate, then the value of the title to it is immaterial in this action.
The construction of the act must be reasonable and not strained. The literal meaning of the words is not decisive one way or the other. To run over the road of the Harlem company with engines and cars does not determine where the cars and engines are to be placed when they are not running. The nature of the subject-matter of the right granted is most important. What is the relation of such an incidental thing in the case of the Harlem road, to its running its own cars and engines ? The act was passed in light of the fact that it was the duty and right of the Harlem road to furnish for its engines, and business, houses and like structures sufficient for its own purposes. It could not have been supposed that, in looking at its own needs, it would accidentally do what would accommodate the defendants. Such an accommodation might happen, but it would not be usual, nor could it be foreseen that it would be continued. There is no indication that the act meant to make it an obligation on the part of the Harlem Railroad to furnish conveniences to the defendant, in a quantity and of an expense or economy suited to the condition of the defendant, and which should properly be regulated by its directors. On the other hand, the legislature did not mean to make the enjoyment of the right it gave to defendant conditioned upon the will and pleasure of the Harlem road, except so far as that is involved in its being necessary that there should be an agreement for the running.
When the act was passed, there was an improbability that the engine-houses of the Harlem road would be roomy enough, or fitted in other points to shelter *36 the defendant’s engines. With this, too, is to be taken, that neither public policy nor the interest or comfort of private land-owners would be served by obliging the defendant to use the buildings of the Harlem road. The effects would be the same if the business was done in Harlem railroad property. If the engines of both companies were under one roof there would not be less smoke or dirt or gas. I am therefore of opinion that the act does not intend to confine the defendant to the use of such structures as the Harlem road had provided or would provide for its own business, nor to such structures as the Harlem road might voluntarily build for the purposes of defendant’s business. Under these considerations the complaint should be dismissed with costs and no allowance.
Lewis Johnston, attorney, and W. M. Ivins and John Reynolds, of counsel, for appellant, among other things, urged :
I. Since the decision at special term here appealed from, the general, term of this court, in Caro v. Metropolitan Elevated Railroad Company (46 Super. Ct. 138), has pronounced an opinion which is the direct contradiction in all respects of the judgment in the case at bar. II. A case very similar in its circumstances to the case at bar is Wesson v. Washburn Iron Company (95 Mass. 95 [1866]), in which the plaintiff succeeded. That the above case is correctly decided, see Campbell v. Seaman, 63 N. Y. 568; Mulligan v. Elias, 12 Abb. Pr. N. S. 259 ; Cleveland v. Citizens’ Gas Light Co., 5 C. E. Green [N. J.) 201; Galbraith v. Oliver, 3 Pittsburg Reps. 78 ; Appeal of Penn’a Lead Co., 23 Alb. L. J. 209 ; Ross v. Butler, 19 N. J. Eq. 294; Tipping v. St. Helen’s Smelting Co., 4 Best & Sm. 608 ; McKeon v. See, 51 N. Y. 300 ; Francis v. Schoellkopf, 53 Id. 152; Aldrich v. Howard, 8 R. I. 248. “The consideration is sometimes urged that the building of a railroad is a work' of great public convenience *37 and benefit. This may afford an excellent reason for taking the plaintiff’ s land in the constitutional manner, but not for taking. it without compensation. If the work is one of great public benefit the public can afford to pay for it” (Eaton v. Railroad Company, 51 N. H. 518 ; citing Green, Chancellor, in Hinchman v. Paterson Co., 2 C. E. Green, 80). III. The injury here inflicted upon plaintiff’s property is such as to amount to a taking of private property under the constitutional clause, and to require compensation from the injuring party (Cooley Const. Lim. [4 ed.] 680, et seq.). Also see following cases, in all of which, as we believe, there were these three elements, viz.: 1. An express statutory authority to do the injurious act in precisely the way in which it was done. 2. A public work. 3. No negligence, but due skill and care (Pumpelly v. Green Bay Co., 13 Wall. 166 [1871]; approved in Bertholf v. O’Reilly, 74 N. Y. 5, 16; and Arimond v. Green Bay Co., 31 Wis. 331, 334 [1872]; Eaton v. B. C. & M. R. R. Co., 51 N. H. 504 [1872]; approved in Grand Rapids Booming Co. v. Jarvis, 30 Mich. 321 [1874]; and Cooley Const. Lim. [4 ed.] 677; Harding v. Stamford Water Co., 41 Conn. 87 [1874]; Nevins v. City of Peoria, 41 Ill. 502 [1866]). Equally strong authorities are: Chicago R. R. Co. v. Hall, 99 Ill. 41 (1878); Tinsman v. R. R. Co., 26 N. J. L. 148; Hooker v. N. H. Co., 14 Conn. 146 ; Fletcher v. Auburn R. R., 25 Wend. 462 ; Gardner v. Village of Newburg, 2 Johns. Ch. 161; Trenton Co. v. Raff, 35 N. J. L. 335; Balt. R. R. Co. v. Reaney, 42 Md. 117 (1874); Delaplaine v. R. R. Co. 42 Wis. 214 (1877); Evansville R. R. Co. v. Dick, 9 Ind. 433; Stetson v. Faxon, 19 Pick. (Mass.) 158 ; Indianapolis R. R. Co. v. Smith, 52 Ind. 428 (1876); People v. Nearing, 27 N. Y. 306; Myers v. City of St. Louis, 14 Am. Law Review, 251 (1880); R. R. Co. v. Cumminsville, 14 Ohio St. 550; Grand Rapids Booming Co. v. Jarvis, 30 Mich. 321 *38 (1874); Matter of Townsend, 39 N. Y. 171; Wager v. Troy R. R. Co., 25 N. Y. 526. The sovereign State of New York, conducting a public improvement pursuant to an act of its legislature, and conducting such work carefully and skillfully, in strict accordance with said act, is under a legal liability to make good in damages the injury inflicted by it (from the necessities of the work) upon the private property of one of its citizens, where none of that property was literally taken (Coster v. Mayor of Albany, 43 N. Y. 399). Even where the injury is merely accidental, unforeseen and temporary, the public agent who causes it, in executing the legislative authority, must make compensation, irrespective of any negligence (Hay v. Cohoes Co., 2 N. Y. 159: Tremain v. Cohoes Co., 2 N. Y. 163 ; McAndrews v. Collerd, 42 N. J. L. 189 [March, 1880]; Drake v. R. R. Co., 7 Barb, et seq.; Mahon v. R. R. Co., 24 N. Y. 658). IV. Unfortunately, the idea was promulgated in some courts, and adopted by some excellent judges, thirty or forty years ago, that, where a public interest was at stake, it was the duty of a public-spirited judiciary to be generous, and not to allow the private prop- • erty rights of a few obstinate individuals to obstruct or hinder the march of improvement. But a wiser theory of the true duty of a judge now prevails in almost every State, and certainly in New York, as the authorities above cited clearly show, and the earlier decisions looking the other way have been silently disregarded or squarely disapproved (see Widehamer v. People, 13 N. Y. 386, 387; Matter of Gilbert Elev. R. R. Co., 3 Abb. N. C. 449; see also language of Walworth, Chancellor, 18 Wend. 17; Guest v. City, 69 N. Y. 516, 517; see also, Nevins v. City of Peoria, 41 Ill. 5,11). V. Any injury to the private property of a citizen, caused in the execution of a public work, requires that just compensation be made for it; pro *39 yided it would have been an actionable injury if committed bp a private individual without statutory authority. To this effect are all the authorities which are constantly reasoning by analogy from the cases of injuries by individual wrong-doers to the cases of injuries by public agents, and vice versa (Eaton v. Railroad Co., 51 N. H. 520 ; Radcliffe v. Mayor, 2 N. Y. 200; Nevins v. City of Peoria, 41 Ill. 510; Hay v. Cohoes Co., 2 N. Y. 159 ; Garwood v. Railroad Co., 83 Id. 400). VI. This particular injury, of which we here complain, is of such a nature as to constitute a talcing within the literal verbal meaning of the constitution (Caro v. Met. El. R. R. Co., supra; Hay v. Cohoes Co., 2 N. Y. 159). Here the defendant claims the right to discharge his steam, smoke, dust and smells upon our premises, and the court below, in refusing to enjoin defendant, must necessarily have held that it had acquired this right. But such a right is an easement in our premises precisely similar in its legal essence to the jus stillicidii of the Roman law, by virtue of which one proprietor had the right to discharge water from his roof upon the premises of his neighbor (Cf. Arndt’s Pand. § 185). But an easement is clearly property in contemplation of law, and often very valuable property. Hence the judgment which denies us compensation, in effect also adjudges that defendant has acquired from us, without our consent; i. e., taicen from us, property, viz., this easement (People v. Haines, 49 N. Y. 590 [1872]; Eaton v. Railroad Co., 51 N. H. 541). VII. Defendant urges that this is a mere consequential injury, and therefore damnum absque injuria. “Incidental ” and “ consequential” injury is such as results from the operation of moral as opposed to material causes (Eaton v. Railroad Company, 51 N. H. 520 ; see brief Roger A. Pryor, in the Caro case, supra). VIII. The court below summed up, in a single sen *40 tence of its opinion, the proposition of law on which it decided this case, as follows : ‘ ‘ Unless the defendants have been authorized by the legislature to place the engine-house where it is, it seems clear that they are guilty of a wrong;, but if the legislature has authorized it, they cannot be held responsible for the consequences of a legal act.” This, it seems, is. begging the question. An unconstitutional act is as if it had never been passed by the legislature. It can confer no rights and afford no protection. IX. Thus far we have assumed, for the purposes of the argument, that defendant had an implied authority to erect this engine-house where it is, but it is clear that such cannot be the case. Defendant asks the court to imply not only an authority to inflict injuries, but to do so without compensation. It is well settled that such an implication will not be made (Tinsman v. Railroad Co., 2 Dutch. 166 ; Hooker v. N. H. Co., 14 Conn. 156 ; Crittenden v. Wilson, 5 Cow. 166 ; Auburn & Cato Co. v. Douglass, 9 N. Y. 444 ; Haskell v. New Bedford, 108 Mass. 208; City of Aurora v. Reed, 57 Ill. 29 ; Brigham v. Edmonds, 78 Mass. 359; Estabrooks v. Railroad Co., 66 Id. 224). Perhaps a more conclusive evidence that there can be no such implied authority here is that the sovereign State does not possess the power itself. It is obvious, therefore, that it cannot confer it (Coster v. Mayor, 43 N. Y. 399).
W. E. Barnett, attorney, and H. H. Anderson, of counsel, for respondent,
among other things, urged:— I. The defendant has explicit legislative authority to take, hold and use the land in question for the purposes of its business, (a) By virtue of its charter (Conn. Pri. Acts 1844, 59 ; N. Y. Session Laws 1846, c. 195 ; Conn. Pri. Acts 1846, 102 ; N. Y. Session Laws 1848, c. 143, § 6), and agreement with the N. Y. & Harlem *41 R. R. Co. (N. Y. Session Laws 1831, c. 263; Id. 1859, c. 387, § 2 ; Conn. Pub. Acts 1871, c. 129 ; Conn. Pri. Acts 1873, 6). (b) By virtue of the general railroad law of New York (Laws 1850, c. 140, § 28; Laws 1850, c. 140, §§ 21, 49 ; as amended by Laws 1869, c. 237, and Laws 1877, c. 224; Purdy v. N. Y. & N. R. R. Co., 61 N. Y. 353). Under these and similar statutes, the courts have held, that railroad companies may properly acquire land for engine-houses, shops for the repair of locomotives, fuel yards, turn-outs and side tracks, as necessary incidents to the operation of a railroad (Opinion of Judge Sedgwick, In re N. Y. C., &c. R. R., 77 N. Y. 248, 263; N. Y. & H. R. R. v. Kip, 46 N. Y. 546; State v. Mansfield, [3 Zab.] 23 N. J. L. 510; Williams v. P. W. & B. R. R., 54 Pa. St. 103; People v. Utica Ins. Co., 15 Johns. 358, 380 ; Pierce on Railroads, 149, 150, 484, and cases there cited). - It was objected that these incidents are meant to be confined to the use of such appur-. tenant structures or conveniences as the Harlem Railroad furnishes. The argument supporting this objection is stated in the opinion below, and refuted. The location of the buildings and structures of the company is within the reasonable discretion of its managers (New York & Harlem R. R. v. Kip, 46 N. Y. 546). II. The court properly found ‘ ‘ that whatever damage has resulted to the plaintiff or her property by reason of defendant’s said use and occupation of its said premises is damnum absque injuria P Where the grantees of a franchise have not exceeded the power conferred upon them, and when they are not chargeable with want of due care, no claim can be maintained for any consequential damages resulting from their acts (Sedg. on Dam. 110 ; Pierce on Railroads, 197, 431; and cases there cited ; Sixth Av. R. R. v. Gilbert El. R. R., 43 Super. Ct. 315; Killinger *42 v. Forty-second Street R. R., 50 N. Y. 206, 211 ; Plant v. L. 1. R. R., 10 Barb. 26 ; Boothby v. A. & K. R. R., 51 Me. 318; Richard’s Appeal, 57 Pa. St. 105; Washburne v. Worcester, 116 Mass. 458; Frankford T. P. Co. v. P. & T. R. R., 54 Pa. St. 345 ; Brand v. Hammersmith, 1 L. R. Q. B. 130 ; reversed, 2 L. R. Q. B. 233; which last was reversed and original sustained in House of Lords, 4 E. & I. App. L. R. 171 ; Mersey Docks v. Gribbs, 1 E. & I. App. L. R. 112.
By the Court.—Speir, J.
It is quite clear that the defendant has ample authority, by virtue of its charter, and the general railroad laws of Hew York, to take, hold and usé the land in question for the purpose of its business. It is equally clear that the courts have held, under these and like statutes, that railroad companies may acquire land for engine-houses, shops for the repair of locomotives, fuel yards, turn-outs, and side tracks, as necessary incidents to the operation of a railroad (Pierce on Railroads, 149, 150, 484 and cases cited).
Whatever the legislature has authorized the defendant to do, it will not be held responsible for the consequences of doing it. Such authority, as matter of law, neither directly, nor by implication, authorizes the infliction of the grievance complained of, nor does it appear to be necessary or incident to the exercise of corporate authority and power.
Under the issues framed in the pleadings and the principles of law governing the case, the plaintiff may concede that there are no restrictions as to the manner of building or operating the railroad, and that the damages which may be recovered must be for injuries directly or immediately caused by the construction or operation of the road in the manner in which it is constructed or operated, and not remote or consequential. It is not claimed that the defendant is in any manner *43 released from the duty of using care and skill in the construction and management of the engine-house, coal-bins, and in the use of the premises to prevent unnecessary damage and injury to the adjacent dwellings. If there be any failure on the part of the defendant in this respect, the burden of proving its neglect to perform its duty is upon the plaintiff. A careful examination of the testimony fails to show that any practical change in the construction of the buildings or the use of the premises could be made by which the damages could be lessened or the nuisance abated.
The question of the legal capacity of the defendant to take title to the land on which the engine-house stands, was not put in issue by the pleadings, and does not appear to be controverted on the trial. The complaint alleges that the defendant is the owner in fee of the land on which the engine-house is built. The point made by counsel on the trial and also on the appeal was, that by the terms of its charter the defendant had no authority to erect the engine-house complained of, or any engine-house used by the Harlem railroad. The learned judge in his opinion makes this answer: “The legislature did not mean to make the enjoyment of the right it gave to the defendant conditioned upon the will and pleasure of the Harlem railroad, except so far as that is involved in, its being necessary that there should be an agreement for the running!”
We think the several requests of the plaintiff to find have been properly disposed of, and that the exceptions taken by the plaintiff on the trial to the rulings of the court upon the admission and rejection of evidence cannot be sustained.
The plaintiff’s counsel relies on the case of Caro v. Metropolitan R. R. Co. (46 Super. Ct. 138), as being identical with the case at bar. This we believe to be a misapprehension, and deserves some notice.
The Caro case presented questions of law arising on *44 a demurrer where the alleged facts are admitted. The action was to restrain the committing a nuisance, and for the redress of wrongs and injuries inflicted by the defendant without ability to make reparation, and which would involve the plaintiff in continuing vexatious litigation, entitling to redress by injunction. The admission of the defendant of the facts alleged showed that the aggression, by the use of the railroad, had become a nuisance which proved to be permanent, and that the plaintiff was without an adequate remedy at law, by reason of the admitted insolvency of the defendant. In such a case, this court was competent to administer its equitable relief by injunction to prevent its continuance. In the case at bar the issue was controverted and a trial was had, and, the facts in dispute being found in favor of the defendant, there is no occasion to invoke the equitable principle for relief.
The judgment should be affirmed, with costs.
Freedman, J., concurred.